s



**THE CITY OF NEW YORK**

**LAW DEPARTMENT**

100 CHURCH STREET
NEW YORK, NY 10007

**MURIEL GOODE-TRUFANT**
*Corporation Counsel*

**ERIC EICHENHOLTZ**
*Managing Attorney*
Phone: (212) 356-2200
E-mail: eeichenh@law.nyc.gov

September 4, 2025

**Via ECF**
Hon. Jennifer H. Rearden
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    **Donlon v. City of New York, et all**
                **Docket No: 25 Civ. 5831 (JHR)**

Dear Judge Rearden:

        I am an Assistant Corporation Counsel in the office of Muriel Goode-Trufant, Corporation Counsel of the City of New York, attorney for defendants City of New York, Eric Adams, Tania Kinsella, John Chell, Michael Gerber and Anthony Marino (collectively "City defendants"). I write today, as instructed by Rule 5(C) of this Court's individual practices, to summarize the basis for the motion to dismiss pursuant to Rules 8, 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure filed today.

        Plaintiff Thomas Donlon ("plaintiff") is the former Interim Police Commissioner of the City of New York. The New York City Police Commissioner is one of the most powerful and revered positions in global law enforcement, commanding a force of approximately 34,000 uniformed officers and an additional 16,000 civilians, and not every person is up to the task. In plaintiff's case, he readily admits throughout the complaint that he was not. Indeed, plaintiff's performance and leadership was so poor that he alleges that "a former NYPD Police Commissioner contacted [Mayor Adams] to inform him that [plaintiff] should be replaced." Amended Complaint ¶548. Ultimately, plaintiff's tenure ended after Mayor Adams appointed Jessica S. Tisch as the permanent Police Commissioner. Rather than conclude that he was removed from the temporary position of Interim Police Commissioner as a result of the feckless and ineffective leadership acknowledged throughout the complaint, plaintiff instead contends that his termination must be the result of retaliation and, somehow, a racketeering conspiracy. In the amended complaint, plaintiff makes conclusory claims his tenure ended as the result of an unlawful and criminal conspiracy. However, these claims are belied by the facts actually plead, which clearly demonstrate instances of his own poor management, hesitation to use plaintiff's lawful and authorized authority to take remedial action, as well as multiple instances of off-putting conduct

by plaintiff toward his subordinates that abided his tenure as Interim Commissioner. Plaintiff readily acknowledges he did not see eye to eye with Mayor Adams about certain NYPD's officials but that the Mayor stated his desire for plaintiff to work with them. Despite the Mayor's request, the facts pleaded in the amended complaint show that plaintiff was instead, on many occasions, confrontational and unprofessional with his subordinates.

To the extent plaintiff truly observed, as he alleges in conclusory fashion, criminal conduct and violations of NYPD procedure during his tenure, it was his obligation as Interim Police Commissioner to take corrective action. Indeed, as plaintiff himself asserts, it was he, and not Mayor Adams, who was legally authorized to reassign, discipline and terminate malfeasant NYPD employees. See Charter §434(b), 422; New York City Administrative Code §14-114 (promotions "shall be made by the Commissioner") and §14-115(a) (giving exclusive power to discipline to the NYPD Commissioner); see also Amended Complaint ¶¶406, 524 and 703. However, plaintiff simply did not do so, and now seeks to sue the City for his own inaction. While plaintiff tries to excuse his inaction by claiming that Mayor Adams did not "authorize" him to do so, that is meritless: the Mayor fully authorized plaintiff, as a matter of law, upon his appointment to head the NYPD. Perhaps most damning to plaintiff's theory, however, is that plaintiff concedes his successor used her own powers, which mirrored his, to remove several NYPD employees for alleged misconduct and malfeasance, thereby acting when he had not.

Defendant is moving to dismiss the amended complaint for several reasons. First, it violates Rule 8 of the Federal Rules of Civil Procedure, which require "a short and plain statement of the claim." Even after using his one amendment as of right, it is a prolix morass of more than 240 pages and over 1375 paragraphs of allegations that, at times, is riddled with contradictions, indecipherable and incomprehensible allegations and devotes scores of its pages to matters unrelated to this case. As detailed in defendants' memorandum, the amended complaint digresses into the substance of other legal claims brought on behalf of other plaintiffs by his same counsel as well as hundreds of paragraphs of allegations unrelated to plaintiff's actual claims.

Plaintiff propounds several legal theories under which he is proceeding: (1) that his termination was part of a criminal racketeering enterprise and therefore he is entitled to damages under the civil RICO statute; (2) that he was terminated for allegedly telling the Mayor about illegal activity at the NYPD in violation of the First Amendment and New York Civil Service Law Section 75-b; (3) he was denied substantive due process in connection with his termination. None of these have merit; and (4) that he was terminated due to his wife filing a notice of claim with the City.

First, with respect to the RICO claim, plaintiff cannot establish that the individual defendants were part of a criminal enterprise. Indeed, while plaintiff claims the purpose of the enterprise was to "amass power" within the department, it is not disputed that Mayor Adams passed over his alleged enterprise co-conspirators for appointment as Police Commissioner not once but twice. Second, plaintiff avers throughout the amended complaint that the motivation for the various defendants was personal animus against him for different reasons, not any coordinated efforts to support a criminal enterprise. Finally, plaintiff cannot claim he was damaged by the alleged RICO enterprise because he was the individual who, as a matter of law was both empowered to and responsible for taking action to address corruption at the NYPD, but failed to

do so.  For example, plaintiff claims promotions were procured using fraud by those under his command, but plaintiff never rescinded those promotions or disciplined those responsible, despite clearly having the power to do so.

With respect to his First Amendment claims, plaintiff's alleged "speech" of discussing alleged misconduct in the NYPD with the Mayor is clearly speech pursuant to plaintiff's job duties as Interim Commissioner (and later Advisor) and not protected.  As the duly appointed Interim Police Commissioner, plaintiff was responsible for, and accountable to the public for, any allegedly corrupt actions taken by the Police Department under his leadership as a matter of law.  There is no "civilian analogue" to the context of plaintiff's speech – no civilian gets direct access to the Mayor or is entrusted with the legal authority plaintiff had to formulate policy on the very issues he was speaking on.  Additionally, even if plaintiff's speech is protected, plaintiff cannot plausibly establish that his speech caused his termination. Plaintiff acknowledges Mayor Adams responded to plaintiff's complaints by doing the only thing he had the ability to do under the circumstances, which is to use his position to express a desire for the people plaintiff was complaining about to be more responsive and respectful to plaintiff.   By taking the oath as Police Commissioner, plaintiff's role necessitated he act affirmatively; it did not afford him the luxury of a passive whistle blower.  Plaintiff's repeated unwillingness or inability as a high-ranking manager to – on his own and independently – navigate and manage any necessary reform amidst a challenging political environment was, itself, a legitimate, non-retaliatory reason for removing him from the position.

Plaintiff's whistleblower claim under Section 75-b of the New York State Civil Service Law fails for similar reasons. The alleged omissions plaintiff "blew the whistle" about were the alleged failure of the City to carry out duties that plaintiff himself had the sole legal power and obligation to address on the City's behalf.  Indeed, plaintiff didn't even take the basic step, required of all public servants, to report potential misconduct to the City's investigative body.

With respect to plaintiff's substantive due process claims, "because the Complaint pleads 'more particularized allegations' under other provisions of the Federal Constitution, the Substantive Due Process claim dissolves into those other claims [and] must be dismissed." King v. City of N.Y., 581 F. Supp. 3d 559, 576 (S.D.N.Y. 2022), aff'd King v. City of N.Y., No. 22-231, (2d Cir. Mar. 8, 2023) (summary order).  Plaintiff's "substantive due process" claim claiming he was terminated due to his wife filing a notice of claim against the City, which, at best, is a First Amendment association claim, fails because plaintiff has not even plead facts that could plausibly establish the individual defendants knew of that notice of claim, much less retaliated against him for it.

Finally, because plaintiff cannot articulate a viable constitutional violation, plaintiff cannot establish a Monell claim against the City of New York and the individual defendants are entitled to qualified immunity on the 42 U.S.C. §1983 claims.  Accordingly, the amended complaint should be dismissed, in its entirety.

                                                                                                        Respectfully submitted,

                                                                                                         */s/ Eric Eichenholtz*  
                                                                                                         Eric Eichenholtz  
                                                                                                         Assistant Corporation Counsel

cc: John Scola (via ECF)