Docket No. 25 Civ. 5831 (JHR)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS G. DONLON,

            Plaintiff

-against-

CITY OF NEW YORK, ERIC ADAMS, TANIA KINSELLA, Individually, JEFFREY MADDREY, Individually, JOHN CHELL, Individually, KAZ DAUGHTRY, Individually, TARIK SHEPPARD, Individually, MICHAEL GERBER, Individually, PAUL SARACENO, Individually, and ANTHONY MARINO, Individually,

            Defendants

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**MURIEL GOODE-TRUFANT**
*Corporation Counsel of the City of New York*
Attorney for City Defendants
100 Church Street
New York, New York  10007-2601

Of Counsel:  Eric Eichenholtz, Maxwell D. Leighton
Tel:  (212) 356-2430
eeichenh@law.nyc.gov
Matter No.: 2025-059032

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT .................................................................................................................... 2

    POINT I .................................................................................................................. 2

        PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH RULE 8 ............................................................................. 2

    POINT II ................................................................................................................. 3

        PLAINTIFF HAS NOT ESTABLISHED A COORDINATED RICO CONSPIRACY OR THAT HE WAS HARMED BY ANYTHING MORE THAN HIS OWN INACTION ...................................................................... 3

    POINT III ................................................................................................................ 9

        AS A MATTER OF LAW, PLAINTIFF CANNOT ESTABLISH RETALIATION FOR ANY PROTECTED SPEECH ............................................. 9

    POINT IV ............................................................................................................. 10

        PLAINTIFF CANNOT LEGALLY ASSERT A SUBSTANTIVE DUE PROCESS CLAIM ............................................................................. 10

    POINT V .............................................................................................................. 11

        PLAINTIFF'S MONELL CLAIM MUST BE DISMISSED BECAUSE HE HAS NOT ESTABLISHED A PLAUSIBLE VIOLATION OF HIS CONSTITUTIONAL RIGHTS ......................................................... 11

    POINT VI ............................................................................................................. 11

        PLAINTIFF'S SECTION 75-b CLAIM SHOULD BE DISMISSED ................. 11

    POINT VII ............................................................................................................ 12

        THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ........................................................... 12

POINT IX ............................................................................................................. 12

    LEAVE TO AMEND SHOULD BE DENIED AS FUTILE ............................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                   **Pages**

Black v. Ganieva, 619 F. Supp. 3d 309 (S.D.N.Y. 2022)……………………………………...….4

Health-Chem Corp. v. Baker, 915 F.2d 805 (2d Cir. 1990)……………………………………...12

King v. City of N.Y., 581 F. Supp. 3d 559 (S.D.N.Y. 2022)………………………………....…10-11

Morrow v. Safir, 242 A.D.2d 217 (App. Div. 1st Dept. 1997)……………………………….…6-7

Natilson v. Hodson, 264 A.D. 384 (App. Div. 1st Dept. 1942)……….…………………….…8

Montero v. City of Yonkers, 890 F.3d 386 (2d Cir. 2018)…………………………………….9-10

Nguedi v. FRB of N.Y., 2017 U.S. Dist. LEXIS 89848 (S.D.N.Y. 2017)………………....…1-2

Raymond v. City of New York, 317 F. Supp. 3d 746 (S.D.N.Y. 2018)…………………….…9-10

Ross v. N.Y.C. Dep't of Educ., 935 F. Supp. 2d 508 (E.D.N.Y. 2013)…………………….…10

Standardbred Owners Ass'n v. Roosevelt Raceway Assocs., 985 F.2d 102 (2d Cir. 1993)….....8-9

Trump v. N.Y. Times Co., 2025 U.S. Dist. LEXIS 184005 (M.D. Fla. 2025)……………...….3

United States v. Angelilli, 660 F.2d 23, 26 (2d Cir. 1981)……………………………………..4

United States v. Cianci, 378 F.3d 71, 80-81 (1st Cir. 2004)……………………………………4

Weintraub v. Bd. of Educ., 593 F.3d 196 (2d Cir. 2010)………………………………………9

**PRELIMINARY STATEMENT**

Plaintiff's opposition does nothing to bolster the weak, spurious, and conclusory allegations in the amended complaint and fails to address the dispositive arguments concerning the deficient pleading raised in defendants' motion. Instead, it doubles down on plaintiff's most absurd contention: that addressing corruption at the NYPD fell outside his job duties as the City's top cop. But regurgitating a factual inaccuracy and legal impossibility does not make it so. The fact is that plaintiff, and plaintiff alone, had the power and responsibility to address and fix the very problems for which he now seeks to hold defendants liable.

No matter how many times plaintiff makes the conclusory claim that he was "sabotaged," it does not change the fact that his opposition often completely ignores the legitimate arguments made in defendants' opening brief or utterly fails to rebuff them, and thus cannot resuscitate his woefully deficient and inadequate pleading. In fact, Plaintiff's opposition only reinforces the carelessness with which he drafted the amended complaint, the factual inaccuracies that riddle it, and the legal insufficiency of his pleading. He conflates verbosity with particularity, introduces facts and exhibits directly contradicting those in the amended complaint, and mocks the Rule 12(b)(6) standard by substituting his own conclusory statements for well-pleaded allegations that could even be considered by this Court.

**STANDARD OF REVIEW – RULE 12(B)(6) MOTION**

Plaintiff misstates the law when asserting "[a]t this stage, the Court must accept Plaintiff's allegations as true." See Pl. Mem at p. 8. This Court must accept the *facts* plead in the complaint as true, and draw reasonable and plausible inferences therefrom. The litany of conclusory statements that make up the bulk of the Amended Complaint provisions relied on in plaintiff's opposition "are not entitled to the assumption of truth otherwise applicable to complaints in the context of motions to dismiss." Nguedi v. FRB of N.Y., 2017 U.S. Dist. LEXIS 89848, at

*10 (S.D.N.Y. 2017), (quotation omitted). Others are matters of law properly adjudicated on a Rule 12 motion.

# ARGUMENT

## POINT I

### PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH RULE 8

Plaintiff's primary excuse for his prolix pleading is his assertion of a RICO claim regarding fraudulent promotions which, under Rule 9(b), requires particularity. However, particularity speaks to substance, not volume, and even the paragraphs plaintiff highlights are nothing more than unrelated asides and rhetorical musings. For example, plaintiff claims paragraphs 100-165, 188 and 191 set forth particularized allegations of the existence of "forged promotion lists." Pl. Mem. At 12. But those paragraphs detail the NYPD disciplinary histories of certain defendants (100-127), speculate about the FBI (119), ponder NYPD morale (157), and baldly characterize a defendant as a "known sexual predator" (122). All of this is, contrary to plaintiff's assertion, the very definition of "surplusage." Pl. Mem at p. 12. It might best be described as "tabloidization," with the amended complaint derived largely from sensationalized local media headlines instead of plaintiff's own recollections. These paragraphs entirely fail to plead particular facts to show the "time, place, speaker and content" of any alleged fraud. For example, the issuance of what plaintiff characterizes without basis as "fraudulent" promotion lists is discussed only in the most general terms and plaintiff **fails to name even one officer that was wrongfully omitted** or removed from any NYPD promotion list due to this alleged "scheme." Plaintiff eschews any such relevant detail for palace intrigue, public malign, and contrived animosity.

Ultimately, under Rule 8, "a complaint is a short, plain, direct statement of allegations of fact sufficient to create a facially plausible claim for relief and sufficient to permit the formulation of an informed response." Trump v. N.Y. Times Co., No. 8:25-cv-2487-SDM-NHA, 2025 U.S. Dist. LEXIS 184005, at *5 (M.D. Fla. Sep. 19, 2025). Plaintiff's amended complaint is plainly not that, as discussed in defendants' moving papers, which detail its digressions and overtly rhetorical musings. But a pleading is "not a megaphone for public relations or a podium for a passionate oration at a political rally or the functional equivalent of the Hyde Park Speakers' Corner." Id. Much of the Amended Complaint appears written to do just that and it does not comply with Rule 8. Plaintiff's opposition makes no case that his pleading complies with these procedural requirements and, accordingly, should be dismissed on that ground.

## POINT II

**PLAINTIFF HAS NOT ESTABLISHED A COORDINATED RICO CONSPIRACY OR THAT HE WAS HARMED BY ANYTHING MORE THAN HIS OWN INACTION**

Plaintiff's claims regarding the alleged "conscious agreement and coordinated purpose" of the purported racketeering conspiracy perfectly illustrates how his conclusory statements are undermined by the very facts pleaded. Plaintiff claims his amended complaint established a "conscious agreement [to] falsify promotions, suppress oversight, and consolidate control." Pl. Mem at 17. Plaintiff then reiterates this conclusion throughout his opposition. See Pl. Mem. at pp. 14-19. But repeating a conclusory statement does not make it a fact, and the actual facts plead tell a different story.

For example, Mayor Adams successively hired two NYPD outsiders, first plaintiff, and thereafter present Commissioner Tisch, rather than his alleged co-conspirators. That makes no sense if, as Plaintiff farcically claims, the purpose of this agreed-upon conspiracy was to

"suppress oversight" and evade accountability. As the amended complaint even observes, Commissioner Tisch took disciplinary action against, even terminating, individuals, including alleged co-conspirators, she believed were not acting in the best interests of the NYPD. Plaintiff's opposition ignores these dispositive facts. It is baseless to claim that any coordinated conspiracy existed to "consolidate control" of the NYPD.

Moreover, as noted in defendants' moving papers, even if they all worked to "sabotage" plaintiff or undermine his authority, which they decidedly did not, a RICO claim requires a showing of a conscious agreement to work together, not "general synchronicity or shared enmity." Black v. Ganieva, 619 F. Supp. 3d 309, 333 (S.D.N.Y. 2022). Plaintiff's opposition utterly fails to refute defendants' argument that a dislike for plaintiff or not sharing his vision for the NYPD is insufficient to create a racketeering enterprise, particularly given that the amended complaint readily acknowledges that various defendants held individual motives that were at odds with each other. Plaintiff's opposition only glosses over the "conscious agreement" RICO element and argues, reductively, that all defendants were clearly part of the same conspiracy because each of them did something bad at some point. Pl. Mem. at 15. Facts showing little more than high-ranking officials jockeying for their own power and influence stand in contrast to the cases plaintiff cites. See, e.g., United States v. Angelilli, 660 F.2d 23, 26 (2d Cir. 1981)(specific examples of over 30 transactions regarding RICO conspiracy to auction property at artificially deflated prices); United States v. Cianci, 378 F.3d 71, 80-81 (1st Cir. 2004)(evidence of ongoing control by defendants for a common aim).

Indeed, the disparate and disconnected alleged aims of various defendants negates any possible conscious agreement towards a coordinated purpose:

- Defendant Tania Kinsella's alleged "coordination" with any other defendant is limited to her presence, as First Deputy Commissioner, in high-level official NYPD meetings. Plaintiff alleges hearing a rumor she was "angry" at not being appointed Commissioner (Amended Complaint ¶419), that he found her "unmanageable" (Id. ¶423), that she was "cordial" but did not follow up on initiatives to plaintiff's satisfaction (Id. ¶480), and she did not control overtime sufficiently in plaintiff's view (Id. ¶¶1115-1131). Plaintiff was also upset because Kinsella expressed a view that he had gone "too far" in handling a confrontational incident with defendant Sheppard. Amended Complaint ¶956. Beyond this, plaintiff alleges an instance when Kinsella looked in Maddrey's direction, making Maddrey "uncomfortable," as she admonished the senior staff to control overtime. Amended Complaint ¶1118.

- Defendant Michael Gerber, the Deputy Commissioner for Legal Matters at NYPD, is alleged, in coordination with other defendants, to have "orchestrated the false arrest of Donlon's wife." Pl. Mem. at 10. Plaintiff cites to paragraphs 14, 233-266, and 696-708 of the amended complaint, none of which supports this claim. The portion of the Amended Complaint concerning the arrest, Paragraphs 1148-1250, only states that Gerber was included on a phone call *after* the arrest and after plaintiff's wife had informed the officers, as a "courtesy," that they were arresting the former Police Commissioner's wife and plaintiff himself came to the scene to intervene in the arrest process. While plaintiff tries to portray this incident

as coordinated retaliation, he quietly acknowledges in his amended complaint that the basis for his wife being arrested was valid – she had a suspended license due to lapsed insurance. This is **entirely unrelated** to any acts or omissions of the defendants. See Amended Complaint 1235-1241.

For both defendants, there are <u>zero</u> factual allegations in the amended complaint about coordination with any other defendant, much less conscious agreement to be part of a conspiracy.

Similarly, plaintiff claims defendants worked together to engage in "espionage neutralizing his ability to act" (Pl. Mem. at p. 18). Such hyperbole further illustrates the insufficiency of his claims. Plaintiff claims he was "spied on" by Sergeant Venus, a subordinate within his office, based on nothing more than his own uncorroborated suspicions about her sharing ministerial information with other managers and NYPD employees who would need to know such things. None of these allegations competently support a claim that defendants enlisted Venus as a spy to enact a scheme of coordinated espionage.

Plaintiff's opposition also fails to refute defendants' arguments on the futility of his damages claims: they must be dismissed simply because plaintiff was in the sole position to eliminate the alleged acts of the conspiracy. When plaintiff learned of allegedly fraudulent promotions, he had the power to remedy them with a stroke of a pen. As the amended complaint concedes his successor did, plaintiff could have reassigned and removed staff who were not following his orders. Plaintiff never disputes that he had the sole legal authority to do so. Moreover, with this power came the legal **obligation** for plaintiff (not Mayor Adams or anyone else) to take corrective action. See <u>Morrow v. Safir</u>, 242 A.D.2d 217, 218 (App. Div. 1st Dept.

1997) (noting the Police Commissioner's "accountability to the public for the integrity of the Police Department.").

Plaintiff's opposition runs from and around these fatal flaws in his pleading. Plaintiff states that the amended complaint "makes clear: Donlon was Commissioner in title only." Pl. Mem at p. 18. Plaintiff then states he had "theoretical statutory authority but no practical ability to exercise it." Id. The problem, of course, is that plaintiff has failed to plead to a single fact that could plausibly support this self-serving statement. Nowhere in the 1,375-paragraph amended complaint does plaintiff ever allege he attempted to exercise his authority to combat this alleged corruption and was unable to do so, not with respect to any alleged unauthorized promotions or purportedly necessary disciplinary action. The paragraphs plaintiff cites to support this argument make clear it is bereft of any substance. See ¶¶ 104 (a command discipline issued to defendant Daughtry in 2012); 120 (remedial firearms training defendant Maddrey was ordered to take at unknown date); 155-63 (allegedly fraudulent promotions but alleging no facts that plaintiff attempted to rescind or address them); 184 (stating in conclusory manner that one unit of NYPD reportedly directly to City Hall); 228 (hirings made by plaintiff's predecessor).

To plausibly establish that plaintiff was "stripped" of the authority the law unambiguously conveyed – to the extent such a notion is even legally possible – plaintiff would need to plead facts showing he actually attempted to exercise that authority that was blocked or undermined sufficiently as to nullify it. Plaintiff has not pleaded these necessary factual allegations because he cannot, consistent with Rule 11, do so.

Instead, plaintiff implicitly concedes he simply chose not to exercise his authority. Plaintiff only complained to the Mayor about purportedly fraudulent promotions. Plaintiff claims he "tolerated" the behavior of the defendants and did not act because he wanted to "be there for

the rank-and-file." See e.g. Amended Complaint ¶425. His rationale for studious inaction is muddled, at best, and certainly does not support the notion he was unable to use his authority. Plaintiff attempts instead to place the blame at the feet of the Mayor, who lacks the power to discipline or reassign NYPD employees, because that is reserved, by law, for the Police Commissioner. See e.g. Natilson v. Hodson, 264 A.D. 384, 387 (App. Div. 1st Dept. 1942) ("We find no provisions in the charter which vest the mayor with power to remove civil service employees . . .").

To the extent that plaintiff's opposition attempts to ground his RICO claim on his termination as Commissioner, that attempt is equally flawed. Plaintiff provides no explanation as to why a RICO enterprise focused his "elimination" would offer him a Senior Advisor role. Indeed, his text exchange with Chief of Staff Camille Varlack, attached to the Declaration of John Scola, dated September 29, 2025 as Exhibit C, renders these claims implausible. They show that, toward the conclusion of his role as Interim Police Commissioner, Varlack engaged with plaintiff for his input on the design of his next senior policymaking role.

This exhibit emphasizes how grossly inaccurate and unreliable the conclusory allegations of the amended complaint are. Plaintiff crafts a story that implies the appointment of Commissioner Tisch came as a complete surprise to him, where he was brought to City Hall on November 25, 2024, and unceremoniously replaced without notice. Amended Complaint 1067. But the Varlack text exchange plaintiff now submits shows precisely the opposite.

Finally, plaintiff's arguments regarding his wife's arrest and that this case is "more than" just than his employment dispute imply an attempt to use a RICO claim to litigate over matters that only damaged plaintiff's wife or other third parties. However, only plaintiff has

standing to assert claims concerning his own damages. See Standardbred Owners Ass'n v. Roosevelt Raceway Assocs., Ltd. P'ship, 985 F.2d 102 (2d Cir. 1993).[1]

Because the facts plead in the amended complaint do not show a coordinated RICO conspiracy or any possible damages, his RICO claims must be dismissed.

POINT III

**AS A MATTER OF LAW, PLAINTIFF CANNOT ESTABLISH RETALIATION FOR ANY PROTECTED SPEECH**

Plaintiff's claim that his speech was not pursuant to his job duties is simply incredible. As Interim Police Commissioner, plaintiff's lawful duties included supervision, personnel management and oversight of the NYPD. His claim that he was "not hired to" "denounce" and correct improper conduct by subordinates under his command (Pl. Mem. at 20) is patently absurd. Indeed, the very reason the Mayor was conversing with plaintiff about the conduct and operations of the NYPD "owes its existence" to the fact that he was the head of the NYPD and, later, a senior advisor on matters impacting the NYPD. See Weintraub v. Bd. of Educ., 593 F.3d 196 (2d Cir. 2010).

The cases plaintiff cites to support the notion that his speech was protected are readily distinguishable because they were not brought by the Interim Police Commissioner or the supervisors of the people they complained about, much less those with the unilateral legal authority

---

[1] In his opposition, plaintiff claims an additional act of retaliation, alleging "defamatory leaks" from Mayor Adams in a July 17 media appearance. Pl. Mem. at 11-18. Plaintiff describes comments made by the Mayor in response to media questions about this action and – he neglects to mention – around when plaintiff's counsel held a press conference to engage in extrajudicial publicity and generate press interest in support of his allegations. Plaintiff has filed a separate notice of claim on this issue and it is outside his pleading, so it was inappropriate to include this matter in plaintiff's opposition.

to address and correct the misconduct complained of.  See Montero v. City of Yonkers, 890 F.3d 386, 394 (2d Cir. 2018); Raymond v. City of New York, 317 F. Supp. 3d 746, 783 (S.D.N.Y. 2018).[2]

Finally, in desperation, plaintiff states that "Whether Donlon's disclosures were made pursuant to his official duties, or instead as a citizen exposing corruption, is a quintessential jury question." Pl. Mem, at p. 22.  That is simply wrong, as this is "largely a question of law for the court." Ross v. N.Y.C. Dep't of Educ., 935 F. Supp. 2d 508, 517 (E.D.N.Y. 2013).  And, in this case, it is not a particularly difficult one.  As defendants noted in their papers without response by plaintiff, there is no "citizen analogue" that gives the same access to the Mayor as a Police Commissioner or high-level advisor, so there is zero ambiguity about the context of the remarks.

Finally, with respect to causation, plaintiff claims he was removed in retaliation for "refusing to bless forged lists, obstruction of oversight, and fraudulent misuse." Pl. Mem. 22.  But the facts plead show something quite different.  Plaintiff had the power to, but did not, remedy allegedly forged lists.  He failed to discipline the people who allegedly "stole" his stamp.  His attempts to claim he was "blowing the whistle" for the Mayor to take action fall flat because of the legal reality that it was plaintiff, not the Mayor, who was obligated to act.

## POINT IV

### PLAINTIFF CANNOT LEGALLY ASSERT A SUBSTANTIVE DUE PROCESS CLAIM

Defendants have asserted the straightforward proposition that a substantive due process claim is entirely subsumed within plaintiff's first amendment claims.  See King v. City of

---

[2] Moreover, plaintiff brushes aside defendants' policymaker argument, claiming it inapplicable because he alleges he was not terminated for policy disagreements.  But the policymaker law focuses on the nature of the role, not the reason for termination.

N.Y., 581 F. Supp. 3d 559, 576 (S.D.N.Y. 2022), aff'd King v. City of N.Y., No. 22-231, (2d Cir. Mar. 8, 2023) (summary order). In opposition, plaintiff claims his factual allegations "cannot be neatly cabined within Plaintiff's First Amendment or other claims." Pl. Mem. at 25. This is completely baseless. As in King, where his claim fit under other legal theories, plaintiffs claims do so as well, here, as there, it precludes a substantive due process claim. Finally, plaintiff has entirely ignored defendants' argument his failure to state a retaliation claim for his wife's arrest, which is the crux of this claim as plead.

## POINT V

### PLAINTIFF'S MONELL CLAIM MUST BE DISMISSED BECAUSE HE HAS NOT ESTABLISHED A PLAUSIBLE VIOLATION OF HIS CONSTITUTIONAL RIGHTS

Plaintiff opposition mischaracterizes defendants' argument against his Monell claim. Defendants do not allege this claim fails "because the alleged misconduct reflects isolated acts by rogue officials." Pl. Mem at p. 26. Plaintiff's Monell claim fails for a much simpler reason – plaintiff has not plausibly established any of his constitutional rights were violated, much less that a deprivation was attributable to an unconstitutional municipal custom, policy or practice.

## POINT VI

### PLAINTIFF'S SECTION 75-B CLAIM SHOULD BE DISMISSED

Plaintiff needlessly argues for the first and second elements of a whistleblower claim, despite the defendants' focus on the clear flaws in the third element. Plaintiff again ignores that, at the time of his alleged whistleblowing activity, he was *the* City official responsible for taking corrective action for what he was disclosing. Again, plaintiff provides this Court no

plausible reason for merely "complaining" about allegedly fraudulent promotions, rather than taking action to rescind or correct them, as was his job.

## POINT VII

### THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Plaintiff's opposition ignores or side-steps defendants' arguments. Defendants are not claiming that their acts are unlawful but objectively reasonable, that, as plead, there is no constitutional claim at all and, even if there was one, it would be such a unique and nuanced claim as to not be clearly established.

## POINT IX

### LEAVE TO AMEND SHOULD BE DENIED AS FUTILE

Plaintiff already has amended his complaint as of right. Further amendment should be denied as futile. <u>Health-Chem Corp. v. Baker</u>, 915 F.2d 805, 810 (2d Cir. 1990). The central and undisputed fact that plaintiff served as Interim Police Commissioner is fatal, as discussed above, to his claims. No amendment can alter the legal salience of that fact.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their motion to dismiss.

Dated:      New York, New York
            October 6, 2025

MURIEL GOODE-TRUFANT
Corporation Counsel of the
  City of New York
Attorney for City Defendants
100 Church Street, Room 5-100
New York, New York 10007-2601
(212) 356-2430
eeichenh@law.nyc.com


By:      *Eric Eichenholtz*
            Eric Eichenholtz
            Assistant Corporation Counsel


Eric Eichenholtz,
Maxwell D. Leighton
Of counsel.

- 14 -

## CERTIFICATION

I hereby certify, pursuant to Local Civil Rule 7.1(b) and Rule 5(B) of the Individual Practices of the Hon. Jennifer H. Rendon, that the attached reply memorandum of law contains less than 3,500 words, not including the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

Dated:     New York, New York
           October 6, 2025

_____
Eric Eichenholtz
Assistant Corporation Counsel